## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
### Norfolk Division

| | |
|---|---|
| DENNIS LeBLANC, ) | |
| ) | |
| Petitioner, ) | |
| ) | |
| v. ) | Case No.: 2:12-cv-340 |
| ) | |
| RANDALL MATHENA, Chief Warden, ) | |
| Red Onion State Prison, Pound, Virginia, ) | |
| and COMMONWEALTH OF VIRGINIA, ) | |
| ) | |
| Respondents. ) | |

## REPORT AND RECOMMENDATION

Before the Court is the Petitioner's, Dennis LeBlanc ("LeBlanc"), Petition for a Writ of *Habeas Corpus* filed pursuant to 28 U.S.C. § 2254 ("Petition"), ECF No. 1, and the Respondents' Motion to Dismiss, ECF No. 17. After being fully briefed, the Motion was referred for disposition to the undersigned U.S. Magistrate Judge ("undersigned") pursuant to 28 U.S.C. § 636(b)(1)(B) and (C), Federal Rule of Civil Procedure 72(b), Local Civil Rule 72, and the April 2, 2002, Standing Order on Assignment of Certain Matters to United States Magistrate Judges. After reviewing the briefs, the undersigned disposes of the Motion on the papers without a hearing pursuant to Federal Rule of Civil Procedure 78(b) and Local Civil Rule 7(J). For the following reasons, the undersigned **RECOMMENDS** the Respondents' Motion to Dismiss, ECF No. 17, be **GRANTED** and LeBlanc's Petition, ECF No. 1, be **DENIED** and **DISMISSED WITH PREJUDICE.**

# I. FACTUAL AND PROCEDURAL BACKGROUND

LeBlanc was convicted in 2002 by a Virginia state trial court of rape and abduction with intent to defile and sentenced a year later to life in prison on each offense. These convictions and sentences were never directly appealed. Because these offenses occurred in 1999 when LeBlanc was sixteen, he is ineligible for parole. VA. CODE ANN. § 53.1-165.1 ("Any person sentenced to a term of incarceration for a felony offense committed on or after January 1, 1995, shall not be eligible for parole upon that offense."). Pursuant to Virginia Code § 53.1-40.01 ("geriatric release statute"), however, LeBlanc may apply for conditional release after turning sixty. *See id.* § 53.1-40.01 ("Any person serving a sentence imposed upon a conviction for a felony offense ... who has reached the age of sixty or older and who has served at least ten years of the sentence imposed may petition the Parole Board for conditional release.").

On May 17, 2010, the U.S. Supreme Court held in *Graham v. Florida*, 560 U.S. 48, 130 S. Ct. 2011 (2010), that "[t]he Constitution prohibits the imposition of a life without parole sentence on a juvenile offender who did not commit homicide," *id.* at ___, 130 S. Ct. at 2034. And if a state "imposes a sentence of life it must provide [such offender] with some realistic opportunity to obtain release before the end of that term." *Id.* Following this ruling, on May 11, 2011, LeBlanc moved to vacate his sentences in the Virginia state trial court that had convicted and sentenced him, arguing that "[b]ecause [he] was sixteen years old at the time of the offense and did not commit a homicide, *Graham* renders his sentence unconstitutional under the Eighth Amendment," especially in light of the allegedly "remote possibility of release" under Virginia's geriatric release statute. ECF No. 18, attach. 7 at 11, 13. After conducting an evidentiary hearing on August 9, 2011, the court, that day, denied the motion. LeBlanc timely appealed to

the Virginia Supreme Court on November 9, 2011, asserting that "[t]he trial court erred by finding that Virginia's [geriatric release statute] saves what would otherwise be [an] unconstitutional sentence of life without parole for a non-homicide crime he committed at sixteen years of age." *Id.*, attach. 1 at 6. After oral argument, the Supreme Court refused the appeal on April 13, 2012, finding no reversible error,[1] and denied LeBlanc's timely petition for rehearing on June 15, 2012.

Four days later, on June 19, 2012, LeBlanc filed the instant § 2254 Petition, his first. The question presented is whether the Virginia Supreme Court's holding in *Angel v. Commonwealth*, 704 S.E.2d 386 (Va. 2011), that Virginia's geriatric release statute provides nonhomicide juvenile offenders sentenced to life in prison without parole a "'meaningful opportunity to obtain release based on demonstrated maturity and rehabilitation,'" *id.* at 402, is contrary to or an unreasonable application of the Eighth Amendment as interpreted in *Graham*. CONST. amend. VIII ("[C]ruel and unusual punishments [shall not be] inflicted."); 28 U.S.C. § 2254(d)(1) ("An application for a writ of *habeas corpus* on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States"); *Graham*, 560 U.S. at ___, 130 S. Ct. at 2024 ("The Constitution prohibits the imposition of a life without parole sentence on a juvenile offender who did not commit homicide.... [I]f [a state] imposes a sentence of life it must provide

---

[1] The undersigned proceeds on the logical assumption that one of the reasons the Virginia Supreme Court refused LeBlanc's appeal, finding no reversible error, is because the question presented there had been raised and decided in a previous case, *Angel v. Commonwealth*, 704 S.E.2d 386 (Va. 2011). Thus, although *Angel* is not explicitly mentioned in the Supreme Court's order refusing LeBlanc's appeal, that case, reviewed in the context of 28 U.S.C. § 2254(d)(1), effectively controls the disposition of this matter.

him or her with some realistic opportunity to obtain release before the end of that term."); *id.* at

___, 130 S. Ct. at 2030 ("A State is not required to guarantee eventual freedom to a juvenile offender convicted of a nonhomicide crime. What the State must do, however, is give defendants ... some meaningful opportunity to obtain release based on demonstrated maturity and rehabilitation."). Although LeBlanc generally requests the Court "[i]ssue a writ of *habeas corpus* granting [him] relief from his unconstitutional sentence," ECF No. 1 at 8, the undersigned presumes that should *Angel* be found to be contrary to or an unreasonable application of clearly established federal law, then the matter must be remanded to the Virginia state trial court for new sentencing in compliance with the Eighth Amendment as interpreted in *Graham*.

The Virginia Attorney General, on behalf of the Respondents, filed a Rule 5 Answer, Motion to Dismiss, and brief in support on November 15, 2012. ECF Nos. 16-18. After the time to file a response and brief in opposition lapsed, the Court, on April 30, 2013, ordered LeBlanc to respond to the Respondents' Motion to Dismiss, finding that additional briefing by the parties would aid the decisional process. ECF No. 20. LeBlanc did so on May 13, 2013. ECF No. 21. The Respondents have not filed a reply brief, and the time to do so has lapsed. Therefore, the Motion is ripe for disposition.

## II. PROCEDURAL ISSUES

### A. Exhaustion

Section 2254 petitions challenge a state's custody of a prisoner "on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). "In the interest of giving the state courts the first opportunity to consider alleged constitutional errors occurring in a state prisoner's trial and sentencing, a state prisoner must

4

exhaust all available state remedies before he can apply for federal *habeas* relief." *Breard v. Pruett*, 134 F.3d 615, 618 (4th Cir. 1998) (citing 28 U.S.C. § 2254(b); *Matthews v. Evatt*, 105 F.3d 907, 910-11 (4th Cir. 1997)). "To exhaust state remedies, a *habeas* petitioner must fairly present the substance of his claim to the state's highest court." *Id.* (citing *Matthews*, 105 F.3d at 911). In Virginia, that court is the Virginia Supreme Court. "The exhaustion requirement is not satisfied if the petitioner presents new legal theories or factual claims for the first time in his federal *habeas* petition." *Id.* (citing *Matthews*, 105 F.3d at 911). "The burden of proving that a claim is exhausted lies with the *habeas* petitioner." *Id.* (citing *Mallory v. Smith*, 27 F.3d 991, 994 (4th Cir. 1994)).

Although neither party addresses exhaustion in their briefs, the undersigned nonetheless finds that LeBlanc has exhausted his available state remedies for the purpose of federal *habeas* review. Specifically, LeBlanc collaterally attacked his sentence by filing with the Virginia state trial court that sentenced him a motion to vacate invalid sentence, which is permitted under Virginia law. *See Rawls v. Commonwealth*, 683 S.E.2d 544, 547 (Va. 2009) ("Th[e] [Virginia Supreme] Court has recognized that a motion to vacate is an appropriate procedural device to challenge a void conviction.... A circuit court may correct a void or unlawful sentence at any time.") (citations omitted). After losing in the state trial court, LeBlanc properly and timely appealed to the Virginia Supreme Court, which also denied him relief. Because the question presented in LeBlanc's Petition is the same one that was put before the Virginia Supreme Court and state trial court, exhaustion has been met, and federal *habeas* review is appropriate here. Notwithstanding exhaustion, however, the Respondents assert that LeBlanc's claim is time-barred, and therefore, his Petition should be denied and dismissed.

5

## B. Statute of Limitations

Section 2254 petitions are subject to a one-year statute of limitations that begins to run from the latest of "the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review" or "the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review."[2] 28 U.S.C. § 2244(d)(1)(A), (C). According to the Respondents, LeBlanc's Petition is time-barred because he should have, but did not, file it by March 4, 2004, one year from March 4, 2003, the date he was sentenced. LeBlanc, however, asserts that the limitation period began to run on May 17, 2010, the date the U.S. Supreme Court decided *Graham*.[3] Excluding the fact that, contrary to the Respondents' argument, LeBlanc's judgment became "final" under 28 U.S.C. § 2244(d)(1)(A) on April 3, not March 4, 2003, when the thirty days to note an appeal from the Virginia state trial court to the Virginia Court of Appeals expired, the undersigned concurs with LeBlanc's assessment and finds that his Petition was timely filed. *See* VA. SUP. CT. R. 5A:6(a) ("No appeal shall be allowed unless, within 30 days after entry of final judgment or other appealable order or decree ... counsel files with the clerk of the trial court a notice of appeal."); *United States v. Clay*, 537 U.S. 522, 527 (2003) ("Finality attaches when[, *inter alia*,] the time for filing a certiorari petition expires.") (citations omitted); *Smith v. Clarke*, 7:13-cv-00059, 2013 WL 866077, at *1 (W.D. Va. Mar. 7, 2013) ("Petitioner's conviction became final

---

[2] 28 U.S.C. § 2244(d)(1)(B) and (D), which address other means by which to calculate the one-year statute of limitations, are not applicable and will not be discussed here.

[3] Although the U.S. Supreme Court modified its decision in *Graham* on July 6, 2010, it matters not for calculating the limitation period because the undersigned finds LeBlanc's Petition was timely filed even under the earlier initial decision date of May 17, 2010.

... when the time expired for petitioner to note an appeal from the Circuit Court ... to the Court of Appeals of Virginia.") (citation omitted).

In *In re Evans*, 449 F. App'x 284 (4th Cir. 2011) (unpublished *per curiam* decision), the U.S. Court of Appeals for the Fourth Circuit granted a petitioner's[4] motion for authorization to file a second or successive § 2254 petition pursuant to 28 U.S.C. §§ 2244(b)(2)(A), (b)(3), and 2255(h)(2). It did so because the petitioner "ha[d] made a 'prima facie showing' that his 'claim [of an unconstitutional sentence] relie[d] on a new rule of constitutional law,[ *i.e.*, *Graham,*] made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable.'" *In re Evans*, 449 F. App'x at 284 (citation omitted). Although the U.S. Government there "properly acknowledged that in the appropriate case *Graham* establishes a previously unavailable rule of constitutional law that applies retroactively on collateral review," it also argued that *Graham* did not apply in that case because one of the petitioner's offenses occurred when he was an adult. *Id.* (citation omitted). Despite the fact that the Fourth Circuit's decision, which is unpublished, only has persuasive value, not precedential authority, the undersigned finds no reason to disturb or depart from the only case from this Circuit that addresses whether *Graham* announced a new rule of constitutional law that was previously unavailable and whether that rule has been made retroactive to cases on collateral review by the U.S. Supreme Court. Other circuits have reached a similar conclusion. *See In re Moss*, 703 F.3d 1301, 1303 (11th Cir. 2013) ("First, *Graham* set out a new rule of constitutional law that was not previously available.... Second, [the petitioner] ha[d] made a *prima facie* showing that *Graham* has been made retroactively applicable by the Supreme Court to cases on collateral review.") (citation omitted); *In re Sparks*, 657 F.3d 258, 260 (5th Cir. 2011) (same) (footnote omitted);

---

[4] The petitioner was a nonhomicide juvenile offender sentenced to life in prison without parole.

*Goins v. Smith*, No. 4:09-CV-1551, 2012 WL 3023306, at *5 (N.D. Ohio July 24, 2012) (same). If the Fourth Circuit did not intend in *Evans* to declare *Graham* to be retroactive, then that issue is best left to that Court to resolve. For the purpose of the analysis here, however, the undersigned calculates the applicable limitation period pursuant to 28 U.S.C. § 2244(d)(1)(C), not § 2244(d)(1)(A).

Accordingly, the limitation period on the claim presented in LeBlanc's Petition began to run on May 17, 2010, the date *Graham* was decided. This period continued to run for 359 days until, as the Respondents acknowledge, it was tolled during the pendency of LeBlanc's motion to vacate from May 11, 2011, when the motion was filed in a Virginia state trial court, to June 15, 2012, when the Virginia Supreme Court denied his petition for rehearing. *See* 28 U.S.C. § 2244(d)(2) ("The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection."); *Terry v. Kelly*, No. 3:10CV635, 2011 WL 1637943, at *2 (E.D. Va. Apr. 28, 2011) ("Pursuant to 28 U.S.C. § 2244(d)(2), the limitation period was tolled ... until the Supreme Court of Virginia denied [the petitioner's] petition for rehearing on his state *habeas corpus* petition"); ECF No. 18, ¶ 7 ("The statute of limitations was tolled during the pendency of the state court proceedings."). The limitation period resumed thereafter for an additional four days, for a total of 363 days, until LeBlanc filed his Petition on June 19, 2012. Because only 363 days elapsed after the one-year statute of limitations began to run, LeBlanc's Petition was timely filed. The undersigned, therefore, turns to the merits.

8

## III. STANDARD OF REVIEW

Although the Virginia Supreme Court refused LeBlanc's appeal in a two-sentence decision, this brief decision in which it found no reversible error in the Virginia state trial court's denial of LeBlanc's motion to vacate constitutes an adjudication on the merits, and the parties do not appear to contest this characterization. *See Bell v. Jarvis*, 236 F.3d 149, 163 (4th Cir. 2000) (*en banc*) ("[Courts] must uphold the state court's summary decision unless [their] independent review of the record and pertinent federal law persuades [them] that its result contravenes or unreasonably applies clearly established federal law, or is based on an unreasonable determination of the facts in light of the evidence presented.") (citations omitted); *Renoir v. Virginia*, No. 7:99-CV-00580-JLK, 2001 WL 34801301, at *8 n.7 (W.D. Va. July 31, 2001) (holding Virginia Supreme Court adjudicated claim on the merits where it found "no reversible error in the judgment complained of"). When a state court addresses the merits of a claim that is raised in a § 2254 petition, the Court may not grant federal *habeas* relief on that claim unless, *inter alia*, the state court decision is contrary to or an unreasonable application of clearly established federal law.[5] 28 U.S.C. § 2254(d)(1). The Court independently reviews whether that decision satisfies either standard. *See Williams v. Taylor*, 529 U.S. 362, 412-13 (2000). A state court decision is "contrary to" clearly established federal law if the state court "arrives at a conclusion opposite to that reached by th[e] [U.S. Supreme] Court on a question of law or if the state court decides a case differently than th[e] [Supreme] Court has on a set of materially indistinguishable facts." *Id.* at 413. As to whether a state court decision is an "['objectively'] unreasonable application" of clearly established federal law, the state court must "identif[y] the correct governing legal principle from th[e] [Supreme] Court's decisions but unreasonably

---

[5] The standard of review contained in 28 U.S.C. § 2254(d)(2) is not applicable and will not be discussed here.

appl[y] that principle to the facts of the prisoner's case." *Id.* at 410. Ultimately, though, "state-court judgments must be upheld unless, after the closest examination of the state-court judgment, a federal court is *firmly convinced* that a federal constitutional right has been violated." *Id.* at 389 (emphasis added). It is the Court's obligation to focus "on the state court decision that previously addressed the claims rather than the petitioner's freestanding claims themselves." *McLee v. Angelone*, 967 F. Supp. 152, 156 (E.D. Va. 1997).

## IV. ANALYSIS

The thrust of LeBlanc's Petition is that the Virginia Supreme Court's holding in *Angel* that Virginia's geriatric release statute provides nonhomicide juvenile offenders sentenced to life in prison without parole with a "'meaningful opportunity to obtain release based on demonstrated maturity and rehabilitation'" is contrary to or an unreasonable application of the Eighth Amendment as interpreted in *Graham*. *Angel*, 704 S.E.2d at 402. To ascertain the accuracy of this claim, the undersigned begins with a review of *Angel*, to which, notably, the U.S. Supreme Court denied a petition for a writ of *certiorari*. *Angel v. Virginia*, 132 S. Ct. 344 (2011).

### A. *Angel v. Commonwealth*

In *Angel*, the defendant, who was a juvenile when he committed certain nonhomicide offenses,[6] was given consecutive sentences of twenty years, twelve months, and three terms of life in prison without parole. After the Virginia Court of Appeals affirmed his convictions and sentences,[7] the defendant appealed to the Virginia Supreme Court, raising six assignments of

---

[6] The defendant was convicted in a Virginia state trial court of malicious wounding, abduction with intent to defile, and object sexual penetration (two counts), all felonies, as well as misdemeanor sexual battery.

[7] The Virginia Court of Appeals did not have the occasion to review the defendant's sentences for compliance with *Graham*. The Virginia Supreme Court nonetheless included this assignment of error when awarding the defendant

10

error, including, *inter alia*, "that his three consecutive life sentences for nonhomicide crimes, without parole, should be vacated" in light of *Graham*. *Angel*, 704 S.E.2d at 391. Although LeBlanc received only two consecutive life sentences without parole, compared to the defendant's three, he asserts the same claim in his Petition as the defendant did in *Angel*, namely, that it is unconstitutional to sentence nonhomicide juvenile offenders to life in prison in Virginia, which has eliminated parole, because the geriatric release statute does not provide such offenders with a realistic and meaningful opportunity for release required under the Eighth Amendment as interpreted in *Graham*.

In rejecting this claim, the Virginia Supreme Court distilled the correct and central holding of *Graham*: "the Eighth Amendment[] '[p]rohibits the imposition of a life without parole sentence on a juvenile offender who did not commit homicide.... [I]f it imposes a sentence of life it must provide him or her with some realistic opportunity to obtain release before the end of that term.'" *Id.* at 401 (quoting *Graham*, 560 U.S. at ___, 130 S. Ct. at 2034). However, as the Supreme Court properly qualified,

> A State is not required to guarantee eventual freedom to a juvenile offender convicted of a nonhomicide crime. What the State must do, however, is give [nonhomicide juvenile offenders] some meaningful opportunity to obtain release based on demonstrated maturity and rehabilitation. It is for the State, *in the first instance*, to explore the means and mechanisms for compliance.... [The Eighth Amendment] does not require the State to release that offender during his natural life.

*Id.* at 401-02 (quoting *Graham*, 560 U.S. at ___, 130 S. Ct. at 2030) (emphasis added). In determining the reach of *Graham*, the Supreme Court resolved that states may "devise methods of allowing juvenile offenders an opportunity for release based on maturity and rehabilitation." *Id.* at 402. One such method in Virginia is the geriatric release statute, which provides prisoners,

---

an appeal.

who are ineligible for parole based on the date of their offense, *see* VA. CODE ANN. § 53.1-165.1, with the opportunity to apply for conditional release after their sixtieth or sixty-fifth birthday, depending on whether they have served at least ten or five years of their sentence, respectively, *id.* § 53.1-40.01. It is the opinion of the Virginia Supreme Court that this mechanism provides nonhomicide juvenile offenders sentenced to life in prison without parole with a realistic and meaningful opportunity for release required under the Eighth Amendment as interpreted in *Graham. See Angel*, 704 S.E.2d at 402.

And the Court may not review a claim raised in a § 2254 petition unless, *inter alia*, the state court decision addressing that claim is contrary to or an unreasonable application of clearly established federal law. *See* 28 U.S.C. § 2254(d)(1). The operative phrase, "clearly established federal law," means "the holdings, as opposed to the dicta, of th[e] [U.S. Supreme] Court's decision as of the time of the relevant state-court decision." *Williams*, 529 U.S. at 412. To identify the central holding of *Graham*, one must turn to the last paragraph of the majority's opinion:

> The Constitution prohibits the imposition of a life without parole sentence on a juvenile offender who did not commit homicide. A State need not guarantee the offender eventual release, but if it imposes a sentence of life it must provide him or her with some realistic opportunity to obtain release before the end of that term.

*Graham*, 560 U.S. at ___, 130 S. Ct. at 2034. By this holding, the U.S. Supreme Court has clearly established that a nonhomicide juvenile offender, like LeBlanc, sentenced to life in prison without parole, at first blush, has been sentenced unconstitutionally if he has no realistic opportunity to obtain release before the end of his term. The parties do not appear to contest this

point. What is less clearly established and the source of the parties' contention, however, is the denotation of the phrase, a meaningful and realistic opportunity for release.

## B. Statistical Data and Parallels to Executive Clemency

In *Graham*, the U.S. Supreme Court held that executive clemency, as the sole mechanism by which a nonhomicide juvenile offender sentenced to life in prison without parole may be released, does not provide a meaningful and realistic opportunity for release because it offers only "the remote possibility of [release and] does not mitigate the harshness of the sentence."[8] *Id.* at ___, 130 S. Ct. at 2027 (citing *Solem v. Helm*, 463 U.S. 277, 300-01 (1983)). The question, therefore, is whether Virginia's geriatric release statute, which provides prisoners like LeBlanc with the opportunity to apply on a known future date for conditional release, and which sounds in parole but is not referred to as such, provides a meaningful and realistic opportunity for release. LeBlanc answers in the negative, arguing that the (remote) possibility of release under the geriatric release statute is the same as under executive clemency. Although LeBlanc does not include in his exhibits information concerning executive clemency in Virginia so as to make a sound analogy to the geriatric release statute, such data is unnecessary to resolve the present question: whether Virginia's geriatric release statute provides a realistic and meaningful opportunity for release of nonhomicide juvenile offenders sentenced to life in prison without parole.

Between 2001 and 2010, the number of prisoners for which Virginia was responsible who were eligible to apply for geriatric release increased from 247 to 669, and was projected to

---

[8] Although executive clemency is available to Virginia prisoners, *see* VA. CONST. art. 5, § 12; VA. CODE ANN. §§ 19.2-363, 53.1-229, this is not the only mechanism by which nonhomicide juvenile offenders sentenced to life in prison without parole may be released. Because executive clemency was the sole mechanism by which the defendant in *Graham* could have been released, the parallels between that case and this one are diminished.

increase to 805 in 2011 and to 962 in 2012. ECF No. 19, attach. 1 at 103, 106. Although there is no reason to challenge the accuracy of these figures, some clarification is warranted. In 2001, the phrase, "committed on or after January 1, 1995," was deleted from the geriatric release statute, S.B. 1167, 2001 Leg. Reg. Sess. (Va. 2001), thereby expanding eligibility for geriatric release to all prisoners, including those who were sentenced under the parole system ("parole-system inmates"), not just those like LeBlanc who were sentenced under the truth-in-sentencing system ("truth-in-sentencing inmates"), when parole was abolished. ECF No. 19, attach. 1 at 39, 64, 102. However, prisoners who are eligible for parole *and* geriatric release do not get "two bites at the apple": they may be considered for parole, which is automatic, *or* they may apply for geriatric release, but they may not be proceed under both in a given year. *Id.*, attach. 1 at 41, 75.

Given this background, the above data offers an altogether different perspective. In 2010, the number of prisoners who were eligible to apply for geriatric release, 669, included a substantial number of parole-system inmates, 489, and a significantly smaller set, 180, of truth-in-sentencing inmates like LeBlanc. *Id.*, attach. 1 at 76, 103. The last figure is indicative of the "relatively small number of offenders sanctioned under truth-in-sentencing laws [who] have qualified for geriatric release consideration," which in 2001 was only 19. *Id.*, attach. 1 at 103. Although the number of prisoners who were eligible to apply for geriatric release increased from 359 to 669 between 2004 and 2010, less than one-fifth of those eligible actually applied: 39 (11%) in 2004 and 129 (19.2%) in 2010. *Id.*, attach. 1 at 105. Of those applicants, geriatric release was granted to two prisoners in 2004 and eight in 2010. *Id.*, attach. 1 at 105.

*On its face*, the number of prisoners who were eligible, applied for, and granted geriatric release—two in 2004 and eight in 2010—substantiates LeBlanc's claim that Virginia's geriatric

release statute is akin to executive clemency in that it provides only a remote, but not a meaningful and realistic, opportunity for release. Upon closer inspection, however, the above data is only thought-provoking, but it is neither persuasive nor dispositive in answering the question presented. To begin, the fact that "[f]ew eligible inmates have applied to be considered for geriatric release," *id.*, attach. 1 at 78, cautions against issuing a broad declaration that the geriatric release statute as it applies to a nonhomicide juvenile offender who is sentenced to life in prison without parole violates the Eighth Amendment as interpreted in *Graham*. The above data, moreover, illustrates that just as the number of prisoners who were eligible and applied for geriatric release rose between 2004 and 2010, those who were granted such release also rose between those years. *Id.*, attach. 1 at 105. Although LeBlanc does not provide actual data for 2011 and 2012, it is logical to assume that these figures likewise rose in the preceding two years and will continue to rise in 2013 and after as the number of parole-system inmates decreases. *See id.*, attach. 1 at 78 ("[F]ew eligible inmates have applied to be considered for geriatric release.... This is most likely because the majority of inmates eligible for geriatric release are also eligible for discretionary parole release."). Depending on the validity of this assumption, the parallel LeBlanc creates between executive clemency and Virginia's geriatric release statute either fails (the number of prisoners granted geriatric release continues to rise) or succeeds (this number freezes or decreases).

A more startling and significantly apparent omission from the preceding data is that it does not address juvenile offenders like LeBlanc who were sentenced under the truth-in-sentencing system. Regardless at what age Virginia distinguishes juvenile offenders from adults, *see* VA. CODE ANN. §§ 16.1-228 (defining a juvenile as any "person less than 18 years of age"),

15

-269.1 (permitting a juvenile offender who is fourteen years of age or older and who commits specific crimes under certain circumstances to be transferred to a Virginia state trial court and tried as an adult), the U.S. Supreme Court has effectively demarcated the ages of majority and minority at eighteen, *see Graham*, 540 U.S. at ___, 130 S. Ct. at 2038 ("*Roper*'s prohibition on the juvenile death penalty followed from our conclusion that '[t]hree general differences between juveniles under 18 and adults demonstrate that juvenile offenders cannot with reliability be classified among the worst offenders.'") (quoting *Roper v. Simmons*, 543 U.S. 551, 569 (2005)).

Assuming, *arguendo*, a seventeen-year-old juvenile offender committed a nonhomicide crime in 1995 and was sentenced to life in prison, that person would be ineligible to apply for geriatric release until (approximately) 2038, when he turns sixty and has served at least ten years of his sentence. VA. CODE ANN. § 53.1-40.01. Accordingly, the above data does not and cannot account for nonhomicide juvenile offenders like LeBlanc who were sentenced under the truth-in-sentencing system. Such data, in fact, would not become available until around 2038. This omission is significant for one reason: LeBlanc is effectively asking the Court to find that the Virginia Supreme Court's decision in *Angel* is contrary to or an unreasonable application of clearly established federal law based on data that does not touch and concern nonhomicide juvenile offenders sentenced to life in prison without parole. This undermines LeBlanc's claim that the geriatric release statute as applied to juveniles is akin to executive clemency.

### C. Virginia Parole Board's Considerations

LeBlanc also asserts that applicants for geriatric release, unlike those proceeding under the parole system, must demonstrate a "compelling reason" for why conditional release is appropriate under the circumstances. ECF No. 1 at 5. Coupled with the fact that 95.4% of

geriatric release applicants have been denied only because of the seriousness of their offense, ECF No. 19, attach. 1 at 46, according to LeBlanc, the geriatric release statute does not provide nonhomicide juvenile offenders sentenced to life in prison without parole with a "meaningful opportunity to obtain release based on demonstrated maturity and rehabilitation," *Graham*, 560 U.S. at ___, 130 S. Ct. at 2030. It is the Virginia Parole Board ("Board"), in the first instance, that reviews applications for geriatric release and determines "whether to release inmates [] based on such factors as the nature of the crime, age and medical condition, length of sentence received, time served, criminal record, institutional record, family and community support, and victim input." ECF No. 19, attach. 1 at 143. However, nothing prevents the applicant from asserting as a "compelling reason" for his conditional release that the offense for which he was convicted and sentenced to life in prison without parole was committed when he was a juvenile. Likewise, contrary to LeBlanc's claim, ECF No. 1 at 6 ("Additionally, the Parole Board's Policy Manual explains that the board … cannot consider the offender's young age at the time of the offense."), nothing precludes the Board from granting conditional release on the basis that the applicant was a juvenile at the time he offended. The above factors account for this. For example, the nature of the crime may encompass the age at which the crime was committed and the applicant's institutional record may demonstrate maturity and rehabilitation.

Additionally, "[a]ll factors in the parole consideration process" apply in the determination of geriatric release. ECF No. 18, attach. 9 at 16. In this vein, the Board is guided by, *inter alia*, the applicant's "history," the "facts and circumstances of the offense," and "mitigating and aggravating factors," ECF No. 19, attach. 1 at 158-61, all of which may account for the age of the applicant at the time he offended. The Board also examines the applicant's "conduct,

employment, education, vocational training, and other developmental activities during incarceration" as well as his "institutional experience" and "changes in motivation and behavior,"[9] which may account for the applicant's maturity and rehabilitation during incarceration. *Id.* When taken together, these factors, and their consideration by the Board in weighing applications for geriatric release, appear to comport with the U.S. Supreme Court's directive in *Graham* that states "give defendants like [LeBlanc] some meaningful opportunity to obtain release based on demonstrated maturity and rehabilitation." *Graham*, 560 U.S. at ___, 130 S. Ct. at 2030. Time will tell whether that is, in fact, the case. For now, "[i]t is for [Virginia], in the first instance, to explore the means and mechanisms for compliance" with *Graham* by the enactment and implementation of its geriatric release statute.[10] *Angel*, 704 S.E.2d at 401-02 (quoting *Graham*, 560 U.S. at ___, 130 S. Ct. at 2030). And it is sufficient for the purpose of resolving the question presented that the record at this point in time is not well developed, and may not be for some time hereafter, to successfully demonstrate that, contrary to the Virginia Supreme Court's decision in *Angel*, Virginia's geriatric release statute as it applies

---

[9] "Institutional experience" includes "response to available programs," "academic achievement," "vocational education, training or work assignments," "therapy," and "general adjustment" based on "inter-personal relationships with staff and inmates" as well as "behavior." Likewise, "changes in motivation and behavior" includes "changes in attitude toward self and others," "reasons underlying changes," and "personal goals and description of personal strengths or resources available to maintain motivation for law-abiding behavior." ECF No. 19, attach. 1 at 159-160.

[10] It is of no moment that LeBlanc "will have to serve nearly 44 years before he reaches the age of 60 and becomes eligible to apply for relief under" the geriatric release statute. ECF No. 1 at 7. The U.S. Supreme Court in *Graham* instructed states to "give defendants like [LeBlanc] some meaningful opportunity to obtain release based on demonstrated maturity and rehabilitation," *not* "to guarantee eventual freedom to a juvenile offender convicted of a nonhomicide crime." *Graham*, 560 U.S. at ___, 130 S. Ct. at 2030. Additionally, the U.S. Supreme Court did not require that an opportunity for release come about ten, twenty, or even thirty years after the defendant is convicted and sentenced. It appears sufficient under *Graham* that the defendant was given "some realistic opportunity to obtain release before the end of that term," presumably before death, even if that opportunity comes forty-four years into his incarceration. *Id.* at ___, 130 S. Ct. at 2034. Virginia's geriatric release statute, according to the Virginia Supreme Court in *Angel*, provides defendants with a meaningful opportunity for release before the end of their prison term, and the undersigned knows of no reason to depart from this determination.

to nonhomicide juvenile offenders sentenced to life in prison without parole violates the Eighth Amendment as interpreted in *Graham*.[11]

## V. RECOMMENDATION

For these reasons, the undersigned **RECOMMENDS** the Respondents' Motion to Dismiss, ECF No. 17, be **GRANTED** and LeBlanc's Petition, ECF No. 1, be **DENIED** and **DISMISSED WITH PREJUDICE**.

## VI. REVIEW PROCEDURE

By receiving a copy of this Report and Recommendation, the parties are notified that:

1. Any party may serve on the other party and file with the Clerk of the Court specific written objections to the above findings and recommendations within fourteen days from the date this Report and Recommendation is mailed to the objecting party, *see* 28 U.S.C. § 636(b)(1)(C); FED. R. CIV. P. 72(b), computed pursuant to Federal Rule of Civil Procedure Rule 6(a) plus three

---

[11] The undersigned has reviewed a recently decided case submitted by LeBlanc, *Parker v. State*, No. 2011-KA-01158-SCT, ___ So.3d ___, 2013 WL 2436630 (Miss. June 6, 2013), in which the Mississippi Supreme Court vacated a defendant's life sentence for a murder he committed as a juvenile. The Court found the defendant's sentence to be incompatible with the U.S. Supreme Court's holding in *Miller v. Alabama*, 130 S. Ct. 2455 (2012), "that the Eighth Amendment forbids a sentencing scheme that mandates life in prison without possibility of parole for juvenile [homicide] offenders," *id.* at 2469 (citing *Graham*, 560 U.S. at ___, 130 S. Ct. at 2030). Specifically, the Mississippi Supreme Court determined that *Miller* applied in this case because though the defendant was sentenced to life, and not life without parole, state law effectively foreclosed the possibility of parole in light of the offense. *Parker*, 2013 WL 2436630, at *7. Although Mississippi has a statute akin to Virginia's in that prisoners may petition for conditional release after turning sixty-five and serving at least fifteen years, *id.* at *8 n.15 (quoting MISS. CODE ANN. § 47-5-139(1)(a)), the Mississippi Supreme Court's analysis in *Parker* does not control here.

First, *Parker* and this case concern two juvenile offenders convicted of two different crimes—a homicide offense in the former and a nonhomicide offense in the latter—and involve two different U.S. Supreme Court decisions applied by the highest courts of two different states to two different state statutes. Second, *Miller*, which is the focus of the Mississippi Supreme Court's inquiry in *Parker*, does not apply in this case because LeBlanc was not sentenced under a scheme that mandated life in prison without parole for juvenile offenders. Third, the Mississippi Supreme Court, in a conclusory fashion and without evidentiary support, declared that "[c]onditional release is more akin to clemency." *Id.* at *8. Had LeBlanc been sentenced to life in prison without parole because that was the sentence that Virginia law mandated (which Virginia does not), and had the sentencing court, in imposing the harshest possible penalty (apart from the death penalty), failed "to take into account how children are different, and how those differences counsel against irrevocably sentencing [him] to a lifetime in prison" (which LeBlanc does not allege), *Miller*, 132 S. Ct. at 2469, then the parallels between *Parker* and this case would become more apparent. But that is not the situation here, and as such, the undersigned declines to follow and apply the reasoning in *Parker*. The undersigned also takes no position on whether the Mississippi Supreme Court correctly or reasonably interpreted and applied *Miller*.

days permitted by Federal Rule of Civil Procedure Rule 6(d). A party may respond to another party's specific written objections within fourteen days after being served with a copy thereof. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b).

2. A United States District Judge shall make a *de novo* determination of those portions of this Report and Recommendation or specified findings or recommendations to which objection is made. The parties are further notified that failure to file timely specific written objections to the above findings and recommendations will result in a waiver of the right to appeal from a judgment of this Court based on such findings and recommendations. *Thomas v. Arn*, 474 U.S. 140 (1985); *Carr v. Hutto*, 737 F.2d 433 (4th Cir. 1984); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).

The Clerk is **DIRECTED** to forward a copy of this Report and Recommendation to counsel of record for the parties.

Lawrence R. Leonard
United States Magistrate Judge

Norfolk, Virginia
July 24, 2013

## CLERK'S MAILING CERTIFICATE

A copy of this Report and Recommendation was mailed on this date to the following:

Jennifer T. Stanton
J.T. STANTON, P.C.
555 East Main Street #801
Norfolk, Virginia 23510
Counsel for the Petitioner

Lara Kate Jacobs
Office of the Attorney General
900 East Main Street
Richmond, Virginia 23219
Counsel for Respondents

Fernando Galindo
Clerk of the Court

By:
Deputy Clerk
July 24, 2013