UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division

DENNIS LeBLANC,

Petitioner,

v.                                                                Civil Action No. 2:12cv340

RANDALL MATHENA,
Chief Warden,
Red Onion State Prison, Pound, Virginia,
and COMMONWEALTH OF VIRGINIA,

Respondents.

## MEMORANDUM OPINION AND ORDER

*Sentencing a child to life imprisonment without the possibility of parole, means denial of hope; it means that good behavior and character improvement are immaterial; it means that whatever the future might hold in store for the mind and spirit of the child, the child will remain in prison for the rest of his or her days.*

*See Graham v. Florida*, 560 U.S. 48, 70 (2010).

## OVERVIEW

Before the Court is a Petition from Dennis LeBlanc ("Petitioner" or "Mr. LeBlanc") for a Writ of Habeas Corpus filed pursuant to 28 U.S.C. § 2254 (ECF No. 1), and a Motion to Dismiss (ECF No. 17) advanced by Respondents Randall Mathena and the Commonwealth of Virginia (collectively, "Respondents"). Mr. LeBlanc argues that his sentence of two life terms without the possibility of parole for the nonhomicide offenses he committed as a juvenile is contrary to, and an unreasonable application of, federal law as established by the United States Supreme Court's holding in *Graham v. Florida*, 560 U.S. 48 (2010). For the following reasons, this Court agrees. Respondent's Motion to Dismiss (ECF No. 17) is **DENIED**, and Mr. LeBlanc's Petition (ECF No. 1) is **GRANTED.**

## FACTUAL AND PROCEDURAL BACKGROUND

Mr. LeBlanc was convicted by a Virginia state court of rape and abduction with intent to defile. Mr. LeBlanc was sixteen years old when he committed these offenses. Because Mr. LeBlanc committed these offenses in 1999, he is ineligible for parole. VA. CODE ANN. § 53.1-165.1 (2014) ("Any person sentenced to a term of incarceration for a felony offense committed on or after January 1, 1995, shall not be eligible for parole upon that offense.").

On May 11, 2011, following the Supreme Court's ruling in *Graham v. Florida*, 560 U.S. 48 (2010), Mr. LeBlanc moved to vacate his sentences in Virginia state trial court, arguing that because he was sixteen years old at the time of the offense and did not commit a homicide, *Graham* renders his sentence unconstitutional under the Eighth Amendment to the United States Constitution. In *Graham*, the Supreme Court held that "[t]he Constitution prohibits the imposition of a life without parole sentence on a juvenile offender who did not commit homicide." 560 U.S. at 82; *see also Miller v. Alabama*, 132 S. Ct. 2455, 2465 (2012) (emphasis added) (recognizing that the *Graham* decision imposed a "*flat ban* on life without parole" for juveniles convicted of nonhomicide offenses).

After conducting an evidentiary hearing on August 9, 2011, the Virginia trial court denied relief to Mr. LeBlanc, concluding that Virginia's Geriatric Release Provision constituted "an appropriate mechanism" that rendered his sentence of two life terms without the possibility of parole an "appropriate sentence" under *Graham*.[1]  Aug. 9, 2011 Hr'g Tr. at 25:14-19. In so

---

[1] Virginia's Geriatric Parole Provision provides:

> Any person serving a sentence imposed upon a conviction for a felony offense, other than a Class 1 felony, (i) who has reached the age of sixty-five or older and who has served at least five years of the sentence imposed or (ii) who has reached the age of sixty or older and who has served at least ten years of the sentence imposed may petition the Parole Board for conditional release.

VA. CODE ANN. § 53.1-40.01 (2014).

concluding, the state trial court referenced a Virginia Supreme Court decision—*Angel v. Commonwealth*, 704 S.E.2d 386 (Va. 2011)—that held that Virginia's Geriatric Release Provision constituted a meaningful opportunity to obtain release for juvenile offenders who did not commit homicide, and that, therefore, sentences of life without parole for these offenders can be construed as compliant with the dictates of *Graham*. 704 S.E.2d at 402 (refusing to vacate a sentence of three life terms plus a term of years for nonhomicide offenses that the defendant committed as a juvenile because of Virginia's Geriatric Release Provision). The trial court held that, under *Angel*, the sentence Mr. LeBlanc received was appropriate and not "void ab initio."[2] Aug. 9, 2011 Hr'g Tr. at 25:23-24.

In justifying Mr. LeBlanc's sentence of life without the possibility of parole as "appropriate," the trial court noted that:

> [b]efore [Mr. LeBlanc] came to me, he had been convicted of carjacking, abduction, robbery, use of a firearm in commission of a felony . . . and all those were pending or had been resolved. This case was not only sad but it was tragic for the woman who was raped because, as I said, she was just an elderly lady walking down a path and the defendant raped her and abducted her. . . . [T]he court at the time prior to sentencing had a psychosexual evaluation done, and basically the psychologist said he was a sociopath in so many words. So based on the totality of that, the court gave him a life sentence. . . . I know it's not a pleasant thing to get a life sentence, but the last thing the defendant told me was, Fuck you, quote/unquote twice. . . . [T]hat was what I was dealing with then. . . . [A]nd, as I said, by the time the court got him [for sentencing], he was nineteen years old or twenty.

Aug. 9, 2011 Hr'g Tr. at 23:14-24:18.

Mr. LeBlanc appealed the decision of the trial court to the Virginia Supreme Court. On April 13, 2012, the Virginia Supreme Court summarily found no reversible error in the trial court's decision.

---

[2] Void ab initio means void "from the beginning." *Void ab initio*, BLACK'S LAW DICTIONARY (10th ed. 2014).

The Virginia Supreme Court's ruling read in its entirety:

> Upon review of the record of this case and consideration of the argument submitted in support of the granting of an appeal, the Court is of opinion there is no reversible error in the judgment complained of. Accordingly, the Court refuses the petition for appeal.

*Dennis LeBlanc v. Commonwealth*, Record No. 111985, Circuit Court No. CR02-1515 (Va. Apr. 13, 2012).

The Supreme Court of Virginia also denied Mr. LeBlanc's timely petition for rehearing on June 15, 2012. On June 19, 2012, Mr. LeBlanc filed the instant Petition, and the matter was referred for disposition to a United States Magistrate Judge. In a Report and Recommendation (ECF No. 24), the Magistrate Judge recommended granting Respondents' Motion to Dismiss and denying the Petition and dismissing it with prejudice.

In reviewing a Report and Recommendation, this Court "may accept, reject, or modify, in whole or in part, the findings or recommendations" made by the Magistrate Judge. 28 U.S.C. § 636(b)(1) (2009); *accord* Fed. R. Civ. P. 72(b)(3). To the extent a party makes specific and timely written objections to a Magistrate Judge's findings and recommendations, this Court must review *de novo* "those portions of the report . . . to which objection is made." 28 U.S.C. § 636(b)(1); *accord* Fed. R. Civ. P. 72(b)(3).

The parties were advised of their right to file written objections to the Report and Recommendation. On August 1, 2013, the Court received objections from Mr. LeBlanc. Respondents declined to respond to these objections and filed no objections of their own. The Court ordered supplemental briefing on the matter. All briefing, the recommendations of the Magistrate Judge, and the entire record have been considered carefully.

## STANDARDS OF LAW

### I. MOTION TO DISMISS

"In proceedings under § 2254, the familiar standards in Rule 12(b)(6) of the Federal Rules of Civil Procedure apply to the government's motion to dismiss." *Walker v. Kelly*, 589 F.3d 127, 138 (4th Cir. 2009); *see also Brooks v. Clarke*, No. 3:15-CV-13, 2015 WL 1737993, at *3 (E.D. Va. Apr. 16, 2015) (employing the Rule 12(b)(6) standard to a motion to dismiss a habeas petition). "Thus, a motion to dismiss a § 2254 petition under Rule 12(b)(6) tests the legal sufficiency of the petition, requiring the federal habeas court to 'assume all facts pleaded by the § 2254 petitioner to be true.'"[3] *Walker*, 589 F.3d at 139 (citation omitted).

"In assessing whether the § 2254 petition states a claim for relief, the district court must consider "the face of the petition and any attached exhibits." *Id.* (citation omitted). A court may consider material from the record of the state habeas proceeding, including affidavits and evidence presented at trial, "without having to convert the Rule 12(b)(6) motion to one for summary judgment under Rule 56(b)." *Id.* "Moreover, a federal court may consider matters of public record such as documents from prior state court proceedings in conjunction with a Rule 12(b)(6) motion." *Id.*

To survive a motion to dismiss, a complaint must contain sufficient factual information "to state a claim to relief that is plausible on its face." *Brooks*, 2015 WL 1737993, at *4 (quoting *Bell Atlantic v. Twombly*, 550 U.S. 544, 570 (2007)). "Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 663-

---

[3] If the Commonwealth files its Answer to the Petition and its Motion to Dismiss simultaneously, "it technically should have filed the motion under Rule 12(c) as one for judgment on the pleadings." 589 F.3d at 139. The United States Court of Appeals for the Fourth Circuit therefore would construe "the Commonwealth's motion as a motion under Rule 12(c) which is assessed under the same standard that applies to a Rule 12(b)(6) motion." *Id.*

64 (2009)).  In evaluating a Motion to Dismiss, the Court must determine whether the petitioner "came forward with sufficient evidence to survive the Commonwealth's dispositive motion [to dismiss] and advance his claim for a merits determination." *Walker*, 589 F.3d at 139.

## II. PETITION FOR HABEAS RELIEF

### A. <u>Antiterrorism and Effective Death Penalty Act</u>

The Antiterrorism and Effective Death Penalty Act ("AEDPA") governs this Court's consideration of a state prisoner's petition for writ of habeas corpus. *Richardson v. Branker*, 668 F.3d 128, 138 (4th Cir. 2012).  The AEDPA standard mandates that a writ of habeas corpus "shall not be granted" for any claim that was adjudicated on the merits in a state court proceeding unless the state court's adjudication was:  (1) "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States"; or (2) "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d) (2015).  "A state-court decision is contrary to [the Supreme Court's] clearly established precedents if it applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases, or if it confronts a set of facts that is materially indistinguishable from a decision of [the Supreme Court] but reaches a different result." *Brown v. Payton*, 544 U.S. 133, 141 (2005).

Under the fundamental notions of state sovereignty, the "AEDPA restricts [the] intrusion of state sovereignty by limiting the federal courts' power to issue a writ to exceptional circumstances, thereby helping to ensure that state proceedings are the central process, not just a preliminary step for a later federal habeas proceeding." *Richardson*, 668 F.3d at 138.  This Court is "mindful that 'state courts are the principal forum for asserting constitutional challenges to state convictions,' that habeas corpus proceedings are a 'guard against extreme malfunctions in

6

the state criminal justice systems, not a substitute for ordinary error correction through appeal,' and that a federal court may only issue the writ if 'there is no possibility fairminded jurists could disagree that the state court's decision conflicts with [the Supreme Court's] precedents.'" *Id.* at 132 (alteration in original) (quoting *Harrington v. Richter*, 562 U.S. 86, 102-03 (2011)).

"In reviewing a state court's ruling on postconviction relief, we are mindful that 'a determination on a factual issue made by a State court shall be presumed correct,' and the burden is on the petitioner to rebut this presumption 'by clear and convincing evidence.'" *Lee v. Clarke*, 781 F.3d 114, 122 (4th Cir. 2015), *as amended* (Apr. 15, 2015) (quoting *Tucker v. Ozmint*, 350 F.3d 433, 439 (4th Cir. 2003)). The AEDPA "demands that state court decisions be given the benefit of the doubt," and it is error for a federal court to conduct *de novo* review of habeas claims that were adjudicated on the merits by a state court. *Richardson*, 668 F.3d at 140-41. However, "[e]ven in the context of federal habeas, deference does not imply abandonment or abdication of judicial review, and does not by definition preclude relief." *Brumfield v. Cain*, No. 13-1433, 2015 WL 2473376, at *6 (U.S. June 18, 2015) (alteration in original). The Supreme Court has emphasized that:

> a habeas court must determine what arguments or theories supported or, as here, could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of [the Supreme] Court.

*Richter*, 562 U.S. at 102.

Further, the AEDPA "directs a federal habeas court to train its attention on the particular reasons—both legal and factual—why state courts rejected a state prisoner's federal claims." *Hittson v. Chatman*, No. 14-8589, 2015 WL 786705, at *1 (June 15, 2015) (Ginsburg, J., concurring). Importantly, "*Richter* makes clear that where the state court's real reasons can be

ascertained, the § 2254(d) analysis can and should be based on the actual 'arguments or theories [that] supported . . . the state court's decision.'" *Id.* at *2 (alteration in original).

A state's highest court may render an unexplained order or summary dismissal, denial, or affirmance of the trial court decision without explanation. When this occurs, the lower court's decision might be the only "reasoned state judgment rejecting [the] federal claim." *Ylst v. Nunnemake*, 501 U.S. 797, 803 (1991). The reviewing federal court employs a rebuttable presumption that "later unexplained orders upholding that judgment or rejecting the same claim rest upon the same ground" as was articulated by the reasoned state judgment. *Id.* (discussing what has become known as the "look through" rule, which directs reviewing federal courts to "look through" to the last reasoned decision in the state courts); *see also Hittson*, 2015 WL 786705, at *2 (noting that *Richter* did not supersede or overrule *Ylst*).

## B. *Graham*'s Prohibition on Life without Parole for Juvenile Nonhomicide Offenders

The issue before the Supreme Court of the United States in *Graham* was "whether the Constitution permits a juvenile offender to be sentenced to life in prison without parole for a nonhomicide crime." *Graham*, 560 U.S. at 52-53. The Supreme Court in *Graham* concluded that "[t]he Constitution prohibits the imposition of a life without parole sentence on a juvenile offender who did not commit homicide." *Id.* at 82; *Miller*, 132 S. Ct. at 2465 (emphasis added) (noting that *Graham* imposed a "*flat ban* on life without parole" for juveniles convicted of nonhomicide offenses). The Court in *Graham* noted that if a state "imposes a sentence of *life* it must provide [the child] with some realistic opportunity to obtain release before the end of that term." 560 U.S. at 82 (emphasis added). *Graham* noted that the opportunity must also be "meaningful" and "based on demonstrated maturity and rehabilitation." *Id.* at 75.

8

The Petitioner in *Graham*, Terrance Jamar Graham, pled guilty to armed burglary with assault or battery and attempted armed robbery in a Florida state court. *Id.* at 53-54. He was sixteen years old when he committed the offenses. *Id.* at 53. The trial court withheld adjudication of guilt as to both charges and sentenced him to concurrent three year terms of probation. *Id.* at 54. Terrance Graham was required to spend the first twelve months of his probation in the county jail, and with credit for time served, he was released on June 25, 2004. *Id.*

Less than six months later, he was arrested for participating in a home invasion robbery. *Id.* The trial court imposed the maximum possible punishment for the prior offenses—life imprisonment. *Id.* at 57. In so doing, the trial court opined that there was no chance for rehabilitation, stating "We can't do anything to deter you. This is the way you are going to lead your life[.]" *Id.* at 57; 58. Although the sentence did not specify "without parole," the sentence was imposed in Florida, which had abolished parole. *Id.* at 58. Therefore, the imposition of a life sentence gave Terrance Graham no possibility of release unless he was granted executive clemency. *Id.*

The Supreme Court concluded that Terrance Graham's sentence was unconstitutional, holding "that for a juvenile offender who did not commit homicide the Eighth Amendment of the United States Constitution forbids the sentence of life without parole." *Id.* at 74. The Court declared that "[t]his clear line is necessary to prevent the possibility that life without parole sentences will be imposed on juvenile nonhomicide offenders who are not sufficiently culpable to merit that punishment." *Id.* Therefore, persons below the age of eighteen when the offense was committed "may not be sentenced to life without parole for a nonhomicide crime." *Id.* at 74-75.

Because "[n]othing in Florida's laws prevent[ed] its courts from sentencing a juvenile nonhomicide offender to life without parole based on a subjective judgment that the defendant's crimes demonstrate an 'irretrievably depraved character[,]'" Florida's practice was "inconsistent with the Eighth Amendment." *Id.* at 76. The Supreme Court unequivocally recognized that the Eighth Amendment "does not foreclose the possibility that persons convicted of nonhomicide crimes committed before adulthood will remain behind bars for life[,]" but it "*forbids States from making the judgment at the outset* that those offenders never will be fit to reenter society." *Id.* at 75 (emphasis added).

## ANALYSIS

### I. Motion to Dismiss

The Court first addresses Respondents' Motion to Dismiss, which tests the legal sufficiency of the Petition. *See Walker v. Kelly*, 589 F.3d 127, 139 (4th Cir. 2009). Respondents raised two grounds upon which they seek dismissal: (1) the petition is untimely; and (2) the petitioner's allegations are without merit and the Petition is frivolous.

First, the Magistrate Judge ruled that the Petition was timely filed. Respondents filed no objection to this ruling. Section 2254 petitions are subject to a one-year statute of limitations that begins to run from the latest of "the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review," or "the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review." 28 U.S.C. § 2244(d)(1)(A), (C).

Mr. LeBlanc's judgment became final in 2003. Therefore, his petition filed in 2012 would be untimely, unless *Graham* applies retroactively on collateral review and the limitations

period was tolled during the pendency of Mr. LeBlanc's state court motions.  The Magistrate

Judge concluded that the *Graham* decision applies retroactively on collateral review, and under

the limitations period proscribed by 28 U.S.C. § 2244(d)(1)(C), Mr. LeBlanc's Petition was

timely filed because the limitations period began to run after *Graham* was decided and was tolled

during the pendency of Mr. LeBlanc's motions in the state court.[4]

As the Magistrate Judge recognized, the United States Court of Appeals for the Fourth

Circuit has never held in a published opinion that *Graham* applies retroactively on collateral

review.  However, it has so held in an unpublished opinion.  *See In re Evans*, 449 F. App'x 284

(4th Cir. 2011) (noting that "the Government properly acknowledged that in the appropriate case

*Graham* establishes a previously unavailable rule of constitutional law that applies retroactively

on collateral review").

Similarly, other federal circuits and this Court have concluded that *Graham* applies

retroactively on collateral review.  *See, e.g., Goins v. Smith*, 556 F. App'x 434, 437 n.1 (6th Cir.

2014) (unpublished) (noting that "[t]he parties do not dispute that *Graham* applies because it set

forth a new rule prohibiting a certain category of punishment for a class of defendants and can

therefore be raised on collateral review"); *In re Moss*, 703 F.3d 1301, 1303 (11th Cir. 2013)

(holding that *Graham* applies retroactively under one of the *Teague*[5] exceptions); *In re Sparks*,

657 F.3d 258, 260-61 (5th Cir. 2011) (alteration in original) (holding that "*Graham* clearly states

a new rule of constitutional law that was not previously available," and that one of the *Teague*

exceptions "necessarily dictate[s] the retroactivity of *Graham*'s holding"); *United States v.*

*Evans*, No. 2:92CR163-5, 2015 WL 2169503, at *4 (E.D. Va. May 8, 2015) (concluding that

---

[4] "The time during which a properly filed application for [s]tate post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection."  28 U.S.C. § 2244(d)(2).

[5] Referring to *Teague v. Lane*, 489 U.S. 288 (1989).

*Graham* "announced a new rule of constitutional law retroactively applicable on collateral review"); *cf. Landry v. Baskerville*, No. 3:13CV367, 2014 WL 1305696, at *8 n.11 (E.D. Va. Mar. 31, 2014) (unpublished) (noting that the Supreme Court's language in *Graham* "clearly indicates the announcement of a substantive rule."). This Court concurs with and adopts the Magistrate Judge's determination that *Graham* applies retroactively on collateral review.

Second, Respondents argued, in conclusory fashion, that Mr. LeBlanc's allegations are without merit and that the Petition is frivolous. With respect to the Motion to Dismiss, the Court need only decide whether Mr. LeBlanc "came forward with sufficient evidence to survive the Commonwealth's dispositive motion [to dismiss] and advance his claim for a merits determination." *Walker*, 589 F.3d at 139. A motion to dismiss therefore "tests the legal sufficiency of the petition, requiring the federal habeas court to assume all facts pleaded by the § 2254 petitioner to be true." *Id.*

Neither party disputes that Mr. LeBlanc exhausted all available state remedies, and the Magistrate Judge so held. Because Mr. LeBlanc's claim was adjudicated on the merits in state court, his petition is not procedurally barred from federal review. *See Ylst v. Nunnemaker*, 501 U.S. 797, 803 (1991). Mr. LeBlanc is serving a sentence of two life terms without the possibility of parole for nonhomicide offenses he committed as a child. The Supreme Court in *Graham* placed a "categorical bar" or "flat ban" on such sentences. *See Graham*, 560 U.S. at 78-79; *see also Miller*, 132 S. Ct at 2465. The state court concluded that Mr. LeBlanc's sentence was nevertheless appropriate and not invalid from the outset. Therefore, Mr. LeBlanc has alleged sufficient factual information to state a claim to relief that is plausible on its face.

## II. Petition for Habeas Relief

Mr. LeBlanc stands before this Court serving two sentences of life without the possibility of parole for offenses he committed at age sixteen. Like Terrance Graham's sentence, Mr. LeBlanc's sentence does not specify "without parole," but, like Florida, Virginia has abolished the parole system. VA. CODE ANN. § 53.1-165.1; *see also Angel v. Commonwealth*, 704 S.E.2d 386, 401 (Va. 2011) (noting that because Virginia has abolished parole, "the effect of" a life sentence "is that [the defendant] will spend the rest of his life confined in the penitentiary").

This Court affords deference to the state court's decision. First, the Court examines the "arguments or theories" that supported the state court's decision, and then the Court "ask[s] whether it is possible that fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in" *Graham. See Richter*, 131 S. Ct. at 786. Because the Supreme Court of Virginia denied Mr. LeBlanc's petition summarily, this Court "looks through" to the last reasoned opinion of the state court and assumes that the higher court based its decision on the same reasoning. *See Ylst*, 501 U.S. at 803; *see also Brumfield v. Cain*, No. 13-1433, 2015 WL 2473376, at *6 (U.S. June 18, 2015) (employing the "look through" rule). In line with *Richter*, this Court's § 2254(d) analysis is based on "the actual 'arguments or theories [that] supported . . . the state court's decision.'" *See Hittson*, 2015 WL 786705, at *1 (June 15, 2015) (Ginsburg, J., concurring).

In denying relief to Mr. LeBlanc, the trial court stated that Mr. LeBlanc's sentence is "appropriate" because Virginia's Geriatric Release Provision is an "appropriate mechanism" through which Virginia falls into compliance with the dictates of *Graham*. Aug. 9, 2011 Hr'g Tr. at 25:14-19. In justifying Mr. LeBlanc's sentence of life without the possibility of parole as "appropriate," the trial court also noted that "by the time the court got him [for sentencing], he

was nineteen years old or twenty." *Id.* at 24:17-18. The trial court further justified the sentence of life imprisonment by pointing to numerous pending and resolved offenses attributed to Mr. LeBlanc, including robbery and carjacking. *Id.* at 23. The trial court went on to say that the psychological reports opined that Mr. LeBlanc was "in so many words" a "sociopath." *Id.* at 23-24. "[B]ased on the totality of that," the state court concluded that a sentence of life imprisonment was appropriate. *Id.* at 24:3.

In 2011, less than a year after the Supreme Court's decision in *Graham*, the Supreme Court of Virginia addressed the issue of whether *Graham* invalidated a defendant's sentence of three consecutive life terms without parole for a nonhomicide offense the defendant committed as a juvenile. *Angel*, 704 S.E.2d at 401.[6] The Supreme Court of Virginia noted the issue relating to the *Graham* decision had not been properly raised in the trial court, but proceeded to address the issue, at the urging of the parties, "to provide guidance to trial courts in Virginia." *Id.* at n.6.

Virginia Code § 53.1-40.01 governs the possible release of geriatric prisoners, and provides for the opportunity of conditional release to prisoners who have reached the age of sixty or older and have served at least ten years of their sentence, or who have reached the age of sixty-five or older and have served at least five years of their sentence. The Supreme Court of Virginia concluded that in light of this provision, Virginia's sentencing scheme can be construed as being in compliance with *Graham*. *See id.* at 401-02. The Virginia Supreme Court held that the possibility of geriatric release provides a "meaningful opportunity to obtain release based on demonstrated maturity and rehabilitation." *Id.* at 401. Therefore, the defendant's sentence of three life terms without the possibility of parole was construed as constitutional.

---

[6] While there were five issues presented in *Angel*, the other four issues related specifically to proceedings at Angel's trial and bear no relevance to the discussion here. *See id.* The petition for writ of certiorari to the Supreme Court of Virginia was summarily denied by the United States Supreme Court. *Angel v. Virginia*, 132 S. Ct. 344 (2011) (denying certiorari). The reason for the denial was not expressed, and it is unclear which of the five issues presented in the *Angel* decision were appealed.

Similarly, the trial court in Mr. LeBlanc's proceedings concluded that the *Graham* decision did not invalidate Mr. LeBlanc's life sentences without the possibility of parole from the outset or otherwise render his sentences inappropriate. As noted above, this Court may grant Mr. LeBlanc's habeas petition if this decision is either (1) "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). This Court focuses primarily on the first prong of the AEDPA standard because Mr. LeBlanc's arguments concern issues of law, rather than factual determinations. *See Richardson*, 668 F.3d at 138 n.9.

Affording deference to the trial court determination, including its reliance on *Angel*, and allowing the trial court all benefit of doubt, this Court concludes that the state court determination was both contrary to clearly established Federal law and involved an unreasonable application of clearly established Federal law as determined by the Supreme Court of the United States. *Cf. Williams v. Taylor*, 529 U.S. 362, 384-86 (2000) (noting that both the "contrary to" and "unreasonable application of" phrases may be implicated, and the phrases are not "mutually exclusive").

A. **Contrary to Clearly Established Federal Law**

First, this Court is compelled to conclude that the state court's decision was contrary to clearly established federal law. "A state-court decision is contrary to [the Supreme Court's] clearly established precedents if it applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases, or if it confronts a set of facts that is materially indistinguishable from a decision of [the Supreme Court] but reaches a different result." *Brown v. Payton*, 544 U.S. 133, 141 (2005). The state court's denial of relief to Mr. LeBlanc upholds a sentence of life

without parole for a juvenile nonhomicide offender. This contradicts the governing law set forth by the Supreme Court in *Graham*, which imposes a flat ban on such sentences. *See, e.g., Miller*, 132 S. Ct. at 2465.

That *Graham* created a categorical bar or flat ban on imposition of a sentence of life without the possibility of parole on juvenile nonhomicide offenders is not subject to reasonable dispute. This flat ban has been established and recognized by the Supreme Court of the United States. *See, e.g., Miller*, 132 S. Ct. at 2461 (noting that "this Court held in *Graham* [] that life without parole violates the Eighth Amendment when imposed on juvenile nonhomicide offenders); *id.* at 2465 (concluding that *Graham* imposed a "flat ban" on life without parole for juvenile nonhomicide offenders); *id.* at 2466 (determining that *Graham* "imposed a categorical ban on the sentence's use, in a way unprecedented for a term of imprisonment"); *id.* at 2468 ("*Graham* . . . teach[es] that in imposing a State's harshest penalties, a sentencer misses too much if he treats every child as an adult"); *id.* at 2470 (noting that "life without parole is permissible for nonhomicide offenses—except, once again, for children"); *id.* at 2475 (Breyer, J., concurring) (noting that "the Eighth Amendment as interpreted in *Graham* forbids sentencing" a juvenile who committed a nonhomicide offense to life imprisonment without parole); *id.* at 2476 (Breyer, J., concurring) ("*Graham* dictates a clear rule:  The only juveniles who may constitutionally be sentenced to life without parole are those convicted of homicide offenses who kill or intend to kill"); *Graham*, 560 U.S. at 74 ("This Court now holds that for a juvenile offender who did not commit homicide the Eighth Amendment forbids the sentence of life without parole. This clear line is necessary to prevent the possibility that life without parole sentences will be imposed on juvenile nonhomicide offenders who are not sufficiently culpable to merit that punishment.").

16

The flat ban on imposing a sentence of life without the possibility of parole for juvenile nonhomicide offenders has also been recognized by United States Courts of Appeals, including the Fourth Circuit. *See, e.g., Johnson v. Ponton*, 780 F.3d 219, 222 (4th Cir. 2015) (noting that *Graham* "categorically barred life-without-parole-sentences for juvenile nonhomicide offenders"); *In re Vassell*, 751 F.3d 267, 269-70 (4th Cir. 2014) (emphasis in original) (concluding that a defendant's petition for habeas relief was untimely because his right to relief first became available after *Graham*, which "prohibited imposing *any* sentence of life without parole—mandatory or individualized—for juveniles convicted of committing nonhomicide offenses"); *id.* at 270 (recognizing that "*Graham* established one rule (a flat ban) for nonhomicide offenders"); *In re Sloan*, 570 F. App'x. 338, 339 (4th Cir. 2014) (noting that *Graham* held "that the Eighth Amendment prohibits a sentence of life without parole for any juvenile offender [] who did not commit homicide"); *accord Moore v. Biter*, 725 F.3d 1184, 1191 (9th Cir. 2013) (concluding that "[t]he Supreme Court was unequivocal that for juvenile nonhomicide offenders, *Graham* established a 'flat ban on life without parole.'").

The Supreme Court noted that "[e]ven if the State's judgment that Graham was incorrigible were later corroborated by prison misbehavior or failure to mature, the *sentence was still disproportionate because that judgment was made at the outset.*" *Graham*, 560 U.S. at 73 (emphasis added). The Eighth Amendment "forbid[s] States from making the judgment at the outset that" a child convicted of nonhomicide offenses "never will be fit to reenter society." *Id.* at 75. However, the state court here twice made the judgment that Mr. LeBlanc would never be fit to reenter society. The state court first made that determination when it sentenced Mr. LeBlanc to life without the possibility of parole in 2003. The state court again made this determination in its decision regarding Mr. LeBlanc's petition for habeas relief. Specifically,

after the United State Supreme Court's holding in *Graham*, the state court justified its sentence of life without parole for a nonhomicide offense by citing Mr. LeBlanc's prior bad behavior, a study that showed that he was, "in so many words," a sociopath, and the fact that he was already an adult by the time the court "got to him," even though the offenses that triggered his life sentences were committed when he was a juvenile.

The Supreme Court in *Graham* addressed similar comments made by the sentencing court in Terrance Graham's case. *Graham*, 560 U.S. at 57 (reflecting upon the trial court's suggestion that Terrance Graham was beyond all hope of rehabilitation). The Supreme Court of the United States forbade this kind of reasoning in *Graham*. *See id.* at 77 (recognizing that "existing state laws, allowing the imposition of these sentences based only on a discretionary, subjective judgment by a judge or jury that the offender is irredeemably depraved, are insufficient to prevent the possibility that the offender will receive a life without parole sentence for which he or she lacks the moral culpability"); *see id.* at 78-79 (concluding that "[a] categorical rule avoids the risk that . . . a court or jury will erroneously conclude that a particular juvenile is sufficiently culpable to deserve life without parole for a nonhomicide" offense).

Moreover, the trial court in Mr. LeBlanc's case relied improperly upon his age at sentencing to justify the harshness of the sentence imposed for crimes he committed as a juvenile. The age of the offender at sentencing has no bearing on the constitutionality of the sentence imposed for offenses the offender committed as a child. *See id.* at 74-75 (emphasis added) (holding that "those who were below [age eighteen] when the offense was committed *may not be sentenced* to life without parole for a nonhomicide crime").

As in *Graham*, because Mr. LeBlanc was a juvenile nonhomicide offender, his sentence of two life terms without the possibility of parole is unconstitutional. *See Graham*, 560 U.S. at

18

74-75. In light of the clear dictates of *Graham*, concluding otherwise would be objectively unreasonable. Therefore, the state court's decision is contrary to the Supreme Court's clearly established precedents. *See Brown*, 544 U.S. at 141 (noting that "[a] state-court decision is contrary to [the United States Supreme Court's] clearly established precedents if it applies a rule that contradicts the governing law set forth in [Supreme Court] cases").

Furthermore, as in *Graham*, because "[n]othing in [Virginia]'s laws prevent[s] its courts from sentencing a juvenile nonhomicide offender to life without parole based on a subjective judgment that the defendant's crimes demonstrate an 'irretrievably depraved character[,]'" Virginia's practice is "inconsistent with the Eighth Amendment." 560 U.S. at 76.

**B. Unreasonable Application of Clearly Established Federal Law**

The trial court's decision also was an unreasonable application of clearly established federal law. The "'unreasonable application' prong of § 2254(d)(1) permits a federal habeas court to 'grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of petitioner's case." *Wiggins v. Smith*, 539 U.S. 510, 520 (2003). "In other words, a federal court may grant relief when a state court has misapplied a 'governing legal principle' to 'a set of facts different from those of the case in which the principle was announced.'" *Id.* "In order for a federal court to find a state court's application of [Supreme Court] precedent 'unreasonable,' the state court's decision must have been more than incorrect or erroneous." *Id.* "The state court's application must have been objectively unreasonable." *Id.* at 520-21.

In denying Mr. LeBlanc relief, the trial court concluded that Virginia's Geriatric Release Provision provides juveniles sentenced to life without parole for nonhomicide offenders a meaningful opportunity for release based on demonstrated maturity and rehabilitation. In its

19

analysis, the state court relied partially upon *Angel*.[7] Aug. 9, 2011 Hr'g Tr. at 25. The Supreme

Court of Virginia reasoned in *Angel* that:

> [t]he [United States] Supreme Court has left it up to the states to devise methods of allowing juvenile offenders an opportunity for release based on maturity and rehabilitation. While the Supreme Court did not identify a specific method or methods that would provide "meaningful opportunity" for release, the Court clearly stated that states did not have to guarantee that the offender would be released. Furthermore the Supreme Court did not require the states provide the opportunity for release at any particular time related to either the offender's age or length of incarceration.

704 S.E.2d at 402.

The Virginia Supreme Court concluded that an inmate's opportunity to apply for geriatric

release renders a sentence of life without parole for juvenile nonhomicide offenders compliant

with *Graham*. *Id.* at 401.

This theory of compliance is a misapplication of the governing legal principle of

*Graham*—that children are different and warrant special consideration in sentencing. This

misapplication is a basis for granting relief. *See Wiggins*, 539 U.S. at 520 (noting that a federal

court may grant relief where the state court misapplied a governing legal principle). It is true

that the Supreme Court left it to the states to seek compliance with *Graham*. However, the

method proposed by a state cannot directly contravene the foundational principles of *Graham*

and still pass constitutional muster. To conclude otherwise would be objectively unreasonable.

The Supreme Court has reiterated that *Graham*'s and *Roper*'s "foundational principle" is

that "children are constitutionally different" and warrant special consideration regarding

sentencing. *Miller*, 132 S. Ct. at 2458 (noting that *Graham* and *Roper*'s "foundational principle"

was "that imposition of a State's most severe penalties for juvenile offenders cannot proceed as

though they were not children"); *id.* at 2464 ("*Roper* and *Graham* establish that children are

---

[7] *Angel v. Commonwealth*, 704 S.E.2d 386 (Va. 2011).

constitutionally different from adults for purposes of sentencing."). Of course a state is not required to guarantee eventual freedom to all juvenile nonhomicide offenders. Just as plainly, however, a state cannot continue to impose life without parole sentences on juvenile nonhomicide offenders as if the flat ban on such sentences does not exist. By relying on a geriatric release provision—a provision that by its very name was designed to be invoked by and on behalf of the elderly—in an attempt to salvage unconstitutional sentences, the Supreme Court of Virginia and the state trial court missed the heart of *Graham*—that children are, and must be recognized by sentencing courts as, distinguishable from adult criminals. *See, e.g., Graham*, 560 U.S. 48, 68-69. The Supreme Court of the United States teaches that:

> [a]s compared to adults, juveniles have a lack of maturity and an underdeveloped sense of responsibility; they are more vulnerable or susceptible to negative influences and outside pressures, including peer pressure; and their characters are not as well formed. These salient characteristics mean that it is difficult even for expert psychologists to differentiate between the juvenile offender whose crime reflects unfortunate yet transient immaturity, and the rare juvenile offender whose crime reflects irreparable corruption. Accordingly, juvenile offenders cannot with reliability be classified among the worst offenders. A juvenile is not absolved of responsibility for his actions, but his transgression is not as morally reprehensible as that of an adult.

*Id.* at 68 (internal quotation marks omitted) (citations omitted).

"[T]he differences between juvenile and adult offenders are too marked and well understood to risk allowing a youthful person to receive a sentence of life without parole for a nonhomicide crime despite insufficient culpability." *Id.* at 78. Scientific studies and medical developments affirm the differences between children and adults. *See id.* at 68 (noting that "developments in psychology and brain science continue to show fundamental differences between juvenile and adult minds"); *see Miller*, 132 S. Ct. at 2464 n.5 (noting that the evidence supporting the scientific differences between children and adults has become "even stronger" after *Graham* and *Roper*). "[F]rom a moral standpoint it would be misguided to equate the

failings of a minor with those of an adult, for a greater possibility exists that a minor's character

deficiencies will be reformed." *Graham*, 560 U.S. at 68.

Although the Supreme Court in *Miller* addressed a different issue, the constitutionality of

mandatory life sentences without parole for juveniles, the Supreme Court's recognition of the

differences between adults and children is compelling and applicable to this case:

> Mandatory life without parole for a juvenile precludes consideration of his
> chronological age and its hallmark features—among them, immaturity,
> impetuosity, and failure to appreciate risks and consequences. It prevents taking
> into account the family and home environment that surrounds him—and from
> which he cannot usually extricate himself—no matter how brutal or
> dysfunctional. It neglects the circumstances of the . . . offense, including the
> extent of his participation in the conduct and the way familial and peer pressures
> may have affected him. Indeed, it ignores that he might have been charged and
> convicted of a lesser offense if not for incompetencies associated with youth—for
> example, his inability to deal with police officers or prosecutors (including on a
> plea agreement) or his incapacity to assist his own attorneys. *See, e.g., Graham*,
> 560 U.S. at 78 ("[T]he features that distinguish juveniles from adults also put
> them at a significant disadvantage in criminal proceedings"); *J.D.B. v. North
> Carolina*, 564 U.S. ——, ——, 131 S. Ct. 2394, 2400–01 (2011) (discussing
> children's responses to interrogation). And finally, this mandatory punishment
> disregards the possibility of rehabilitation even when the circumstances most
> suggest it.

132 S. Ct. at 2468.

From the inception of the juvenile justice system, reformers recognized that children

ought to be treated differently within the criminal justice system. *See, e.g., In re Gault*, 387 U.S.

1, 15 (1967) ("The early reformers were appalled by adult procedures and penalties, and by the

fact that children could be given long prison sentences and mixed in jails with hardened

criminals."). Plainly, the Supreme Court has recognized that differences between children and

adults must be taken into account when considering sentencing policies. *See, e.g., Roper v.

Simmons*, 543 U.S. 551, 569 (2005) (recognizing at least three meaningful differences between

children and adults); *see also Graham*, 560 U.S. 48, 68-69 (citing *Roper* and recognizing that children warrant special consideration).

Similarly, the Fourth Circuit has recognized that the holdings in *Miller* and *Graham* were rooted in the truth that exceptions are warranted for children facing sentencing. *See, e.g., Johnson v. Ponton*, 780 F.3d 219, 221-22 (4th Cir. 2015) (recognizing that the "concern motivating" the Supreme Court's decision in *Miller* was that the "sentencing scheme" employed by the lower court "preclude[d] consideration of how children are different from adults"); *id.* at 222 (quoting the Supreme Court's rationale that "it is the odd legal rule that does not have some form of exception for children"); *United States v. Howard*, 773 F.3d 519, 532 (4th Cir. 2014) (holding that a district court's sentence failed to appreciate that the defendant was a juvenile when he committed three predicate convictions); *United States v. Hunter*, 735 F.3d 172, 174 (4th Cir. 2013) (noting that "children are constitutionally different from adults for purposes of sentencing due to their diminished culpability and greater prospects for reform") (quoting *Miller*, 132 S. Ct. at 2464)). "Youth is a mitigating factor derive[d] from the fact that the signature qualities of youth are transient; as individuals mature, the impetuousness and recklessness that may dominate in younger years can subside." *Howard*, 773 F.3d at 532 (alteration in original) (quoting *Roper*, 543 U.S. at 570).

A sentencing scheme that applies the holding of *Graham* in a manner that contravenes *Graham*'s foundational principle, that courts must account for differences between children and adults, evinces an unreasonable application of federal law. *See Wiggins*, 539 U.S. at 520. Virginia attempts to deny the unconstitutionality of this sentencing scheme by relying on its Geriatric Release Provision. This approach does not pass constitutional muster.

23

If it can be said that Virginia's sentencing scheme treats children differently than adults, it would be because, tragically, the scheme treats children *worse*.  Under Virginia's current sentencing policies, prisoners are serving sentences of life without the possibility of parole for nonhomicide offenses that they committed as children.  Like any other prisoner in Virginia, regardless of their age at the time of the offense, if these prisoners live to see the age of sixty or sixty-five, they may apply for geriatric release.  This treats children worse than adults.  *See Graham*, 560 U.S. at 70 (recognizing that life without parole for juveniles imposes a harsher sentence on children than adults who receive the same sentence because the child will spend a "greater percentage of his life in prison than an adult offender").  For example, a "16-year old and a 75-year-old each sentenced to life without parole receive the same punishment in name only." *Id.* "This reality cannot be ignored." *Id.*

In reality, children are receiving harsher sentences than adults:  they are subjected to life terms of imprisonment without the possibility of parole like adults, and they must serve a larger percentage of their sentence than adults do before eligibility to apply for geriatric release occurs. *Cf. Kent v. United States*, 383 U.S. 541, 556 (1966) (in addressing rights afforded to juveniles in the early years of the juvenile justice system, noting that "there may be grounds for concern that the child receives the worst of both worlds:  that he gets neither the protections accorded to adults nor the solicitous care and regenerative treatment postulated for children").

This Court is guided by the principles recognized in *Graham* that, as addressed above, "all juvenile nonhomicide offenders [should be given] a chance to demonstrate maturity and reform." *Graham*, 560 U.S. at 79.  While a state "need not guarantee the [nonhomicide juvenile] offender's eventual release . . . it *must* provide him or her with *some realistic opportunity to obtain release*." *Id.* at 82 (emphases added).

Mr. LeBlanc and all similarly situated juveniles lack any chance of seeking a meaningful life, while older, more culpable prisoners may be given an opportunity to obtain freedom in ten years or less. This "application" of *Graham* would not be simply incorrect or erroneous; it is objectively unreasonable because it turns *Graham* on its head. *See Barnes v. Joyner*, 751 F.3d 229, 251 (4th Cir. 2014) (concluding that a trial court's decision was not simply incorrect or erroneous, but was objectively unreasonable where the trial court's actions "turned [the applicable Supreme Court precedent] on its head").

Geriatric release cannot be the type of "meaningful opportunity" for release envisioned by the Supreme Court in *Graham*. *See Casiano v. Comm'r of Correction*, No. 19345, 2015 WL 3388481, at *11 (Conn. May 26, 2015) ("[W]e do not regard the juvenile's potential future release in his or her late sixties after a half century of incarceration sufficient to escape the rationales of *Graham* or *Miller*.") (quoting *State v. Null*, 836 N.W.2d 41, 71 (Iowa 2013)); *Bear Cloud v. State*, 334 P.3d 132, 142 (Wyo. 2014) (noting that the prospect of geriatric release does not comport with the dictates of *Graham*); *Null*, 836 N.W.2d at 71 ("The prospect of geriatric release, if one is to be afforded the opportunity for release at all, does not provide a 'meaningful opportunity' to demonstrate the 'maturity and rehabilitation' required to obtain release and reenter society as required by *Graham*").[8]

As the Supreme Court of Connecticut recognized, "[a] juvenile offender is typically put behind bars before he has had a chance to exercise the rights and responsibilities of adulthood, such as establishing a career, marrying, raising a family or voting." *Casiano*, No. 19345, 2015 WL 3388481, at *10. Even assuming that a juvenile offender does "live to be released, after a half century of incarceration, he will have irreparably lost the opportunity to engage

---

[8] This Court is unaware of any jurisdiction in the country other than Virginia that has held that an opportunity for geriatric release for juvenile nonhomicide offenders serving life terms without parole comports with the dictates of *Graham*.

meaningfully in many of these activities," and the offender "will be left with seriously diminished prospects for his quality of life for the few years he has left." *Id.* Further, a juvenile released in his or her sixties is released at a time "when the law presumes that he [or she] no longer has productive employment prospects." *Id.* "[T]he offender [may] be age-qualified for Social Security benefits without ever having had the opportunity to participate in gainful employment." *Id.* (citing 42 U.S.C. § 416(l)). The juvenile's prospects for a meaningful life "will also be diminished by the increased risk for certain diseases and disorders that arise with more advanced age[.]" *Id.* This Court agrees with the Supreme Court of Connecticut's reasoning that:

> the United States Supreme Court viewed the concept of "life" in *Miller* and *Graham* more broadly than biological survival; it implicitly endorsed the notion that an individual is effectively incarcerated for "life" if he will have no opportunity to truly reenter society or have any meaningful life outside of prison.

*Id.* at *11 (holding that *Graham* and *Miller* apply to lengthy term-of-year sentences and that a term of fifty years imprisonment without parole for a juvenile offender implicate the procedures set forth in *Miller*).

The Supreme Court of Wyoming also noted that the determination of whether the principles of *Miller* and *Graham* apply in a given case should not turn on the "niceties of epidemiology, genetic analysis, or actuarial sciences in determining precise mortality dates." *Bear Cloud v. State*, 334 P.3d 132, 142 (Wyo. 2014) (quoting *Null*, 836 N.W.2d at 71).[9] This Court finds the reasoning of the Supreme Courts of Iowa, Wyoming, and Connecticut persuasive. The remote possibility of geriatric release does not provide a meaningful opportunity for release based on demonstrated maturity and rehabilitation.

---

[9] The court in *Bear Cloud* also noted that the United States Sentencing Commission equates a sentence of 470 months (39.17 years) to a life sentence. 334 P.3d at 142.

As a matter of law, parole and geriatric release in Virginia are different concepts, notwithstanding some similarities. *See Solem v. Helm*, 463 U.S. 277, 300 (1983) (noting that "parole and commutation are different concepts, despite some surface similarities"). Surface similarities include that the Virginia Parole Board regulates both parole and geriatric release, and that the release factors applicable to parole are also applied in the geriatric release process. VA. CODE. ANN. § 53.1-40.01; Va. Parole Bd. Admin. P. No. 1.226 ("Conditional Release of Geriatric Inmates"). However, most similarities end there.

Provisions governing parole are found in a chapter entitled "Probation and Parole" in Virginia's statutory provisions. VA. CODE. ANN. § 53.1-151. The geriatric release provision is contained in the chapter regarding "State Correctional Facilities," and in a subsection regarding the "privileges" of prisoners. *See* VA. CODE. ANN. § 53.1-40.01. Inmates who have been identified for a first parole consideration "*shall* be interviewed for parole." Va. Parole Bd. Admin. P. No. 1.201 (emphasis added). The Virginia Parole Board has discretion to deny any petition for geriatric release "on a review of the record," without advancing to the interview stage. *Id.* at No. 1.226. Additionally, unlike inmates applying for regular parole, inmates applying for geriatric release must identify "compelling reasons" for conditional release. *Id.*

Further, prisoners applying for geriatric release who are serving life sentences require the concurrence of four members of the Parole Board for a grant of conditional release. Va. Parole Bd. Admin. P. No. 1.226 (requiring a concurrence of four members for geriatric release to prisoners serving a life term). Prisoners applying for regular parole consideration require only three such votes. Va. Parole Bd. Policy Manual, sec. II, subsec. G, para. 1 (requiring concurrence of three members). The opportunity for release under Virginia's Geriatric Release Provision is similar to the regular parole decision process for inmates serving life sentences for

first degree murder. Both require concurrence of four members. *Compare* Va. Parole Bd. Admin. P. No. 1.226 (requiring a concurrence of four members for any geriatric release prisoner currently serving a life term) *with* Va. Parole Bd. Admin. P. No. 1.206 (requiring a concurrence of four members for inmates serving sentences for first-degree murder).

The Magistrate Judge's Report and Recommendation focused on statistics and probabilities which illustrate that typically, only a small percentage of geriatric release eligible inmates are released through the provision. Although statistics may shed light on whether the opportunity for release is realistic, this Court concludes that statistics cannot be given a controlling effect on whether a state is in compliance with *Graham*. Statistics change, and what may be reasonably viewed as "realistic" one year may not be so the next.

The Supreme Court in *Graham* imposed a categorical bar on a sentence of life without the possibility of parole to prevent the "possibility that life without parole sentences will be imposed on juvenile nonhomicide offenders[.]" *Graham*, 560 U.S. at 74. The *Graham* Court did not address the statistics related to how often prisoners were granted executive clemency in Florida. Instead, the Supreme Court rejected the possibility of executive clemency as a basis to save an otherwise unconstitutional sentence because clemency is an "ad hoc exercise" that may occur for any reason, and because parole is a "regular part of the rehabilitative process." *See Graham*, 560 U.S. at 69-70 (citing *Solem*, 463 U.S. at 300). Although statistics are helpful, a method that focuses too heavily on release statistics misses the mark of *Graham* and *Solem*, which emphasized the nature of the opportunity for release, not merely the regularity of its use.

The Magistrate Judge's Report and Recommendation also noted that discerning whether juvenile nonhomicide offenders in Virginia serving life terms will be released under Virginia's Geriatric Release Provision at realistic or meaningful levels is impossible because no juvenile

under that sentencing scheme has yet reached age sixty. Compelling juveniles who are currently serving sentences of life without the possibility of parole to wait until enough similarly situated juveniles reach age sixty so that courts can reassess the probabilities and statistics related to geriatric release perpetuates the injustice that *Graham* sought to correct. By proceeding to apply the foundational principles of *Graham* in evaluating the sentences that juveniles are currently serving, this Court need not engage in speculation about what these juveniles might face in forty or fifty years. Mr. LeBlanc is entitled to challenge the constitutionality of his sentence now. *Cf. Rowe v. Peyton*, 383 F.2d 709, 719 (4th Cir. 1967) *aff'd*, 391 U.S. 54 (1968) (concluding that "the remedy to serve the pressing need for an undelayed judicial determination of these substantial claims of constitutional deprivations should be the traditional one in this area, habeas corpus"). "Justice delayed for want of a procedural, remedial device over a period of many years is, indeed, justice denied to the prisoner and, in an even larger degree, to Virginia." *Id.* at 715.

Under Virginia's current sentencing scheme, *Graham* has been rendered a judicial nullity. Before *Graham*, nothing prevented Virginia state courts from imposing the sentence of life without parole for juvenile nonhomicide offenders, and all prisoners had the same opportunity to apply for geriatric release at age sixty. After *Graham*, under the state's rationale, nothing prevents Virginia state courts from imposing the sentence of life without parole for juvenile nonhomicide offenders, and all prisoners have the same opportunity to apply for geriatric release. Virginia's sentencing scheme for juveniles violates the spirit and the letter of *Graham*, and the state trial court's application of *Graham* in denying Mr. LeBlanc relief is objectively unreasonable. *See Barnes v. Joyner*, 751 F.3d 229, 251 (4th Cir. 2014).

Other states have understood that *Graham*'s flat ban on sentences of life without parole for juveniles convicted of nonhomicide offenses compel changes that afford constitutional

29

protection (in various forms) to prisoners. *See, e.g., Lawton v. State*, No. SC13–685, 2015 WL 1565725, at *1 (Fla. April 9, 2015) (noting that the categorical ban in *Graham* applies "*in all circumstances*"); *Henry v. State*, No. SC12-578, 2015 WL 1239696, at *2 (Fla. Mar. 19, 2015) ("the status of juvenile offenders warrants different considerations by the states whenever such offenders face criminal punishment as if they are adult"); *State v. Shaffer*, 77 So.3d 939, 942 (La. 2011) (removing the restriction on parole eligibility for a juvenile after noting that "*Graham* reflects the Supreme Court's determination that juveniles are a special class of offenders deserving of special protections otherwise not accorded adult offenders"); *see also State v. Castaneda*, 842 N.W.2d 740, 759 (Neb. 2014) (noting that Nebraska enacted new legislation post-*Graham* in order to afford juveniles the protections that the federal constitution requires).

In light of the foregoing analysis, "[e]ven the most skilled legal contortionist could not interpret [the trial court's decision] in a way that sensibly comports with the Supreme Court's crystalline pronouncements" in *Graham*. *See United States v. Hashime*, 722 F.3d 572, 574 (4th Cir. 2013). There is no possibility that fairminded jurists could disagree that the state court's decision conflicts with" the dictates of *Graham*. Therefore, this Court must grant Mr. LeBlanc's petition. *See Richter*, 131 S. Ct. at 786-87.

Life without parole deprives a child of hope of restoration. *Graham*, 560 U.S. at 69-70. "[T]his sentence means denial of hope; it means that good behavior and character improvement are immaterial; it means that whatever the future might hold in store for the mind and spirit of [the child], he [or she] will remain in prison for the rest of his [or her] days." *Id.* at 70.

As the Virginia Supreme Court itself recognized, a sentence of life in Virginia means that children "will spend the rest of [their] li[ves] confined in the penitentiary." *Angel*, 704 S.E.2d at 401. Virginia's sentencing scheme for juveniles who commit nonhomicide crimes treats children

worse than adults, and strips them of hope. Hope allows a child to live for an assured future despite an imperfect past.

The Supreme Court has recognized that nonhomicide juvenile offenders serving life sentences must be given "the opportunity to achieve maturity of judgment and self-recognition of human worth and potential." *Graham*, 560 U.S. at 79. The distant and minute chance at geriatric release at a time when the offender has no realistic opportunity to truly reenter society or have any meaningful life outside of prison deprives the offender of hope. Without hope, these juvenile offenders are being discarded in cages and left to abject despair rather than with any meaningful reason to develop their human worth. This result falls far short of the hallmarks of compassion, mercy and fairness rooted in this nation's commitment to justice.

## CONCLUSION

Petitioner's objections to the Magistrate Judge's Report and Recommendation (ECF No. 24) are **SUSTAINED**. Accordingly Respondents' Motion to Dismiss (ECF No. 17) is **DENIED**. Because the state court's decision was both contrary to, and an unreasonable application of, clearly established federal law set forth in *Graham v. United States*, 560 U.S. 48 (2010), Mr. LeBlanc's Petition (ECF No. 1) is **GRANTED**. His case is **REMANDED** for resentencing in accordance with *Graham*. Mr. LeBlanc may not be sentenced to life without the possibility of parole for nonhomicide offenses he committed as a juvenile.[10]

**IT IS SO ORDERED.**

Arenda L. Wright Allen
United States District Judge

July 1 , 2015
Norfolk, Virginia

_____

[10] Although the issue is not presently before this Court, other jurisdictions have held that *Miller* and *Graham* apply to lengthy term-of-years sentences or aggregate sentences, and this Court agrees. *See Moore v. Biter*, 725 F.3d 1184, 1192 (9th Cir. 2013) (holding that a sentence of 254 years is materially indistinguishable from a life sentence without the possibility of parole); *Casiano v. Comm'r of Correction*, No. 19345, 2015 WL 3388481, at *11 (Conn. May 26, 2015) (concluding that "a fifty year term and its grim prospects for any future outside of prison effectively provide a juvenile offender with 'no chance for fulfillment outside prison walls, . . . no hope.'"); *Brown v. State*, 10 N.E.3d 1, 7-8 (Ind. 2014) (reducing a juvenile's sentence to eighty years after concluding that, while the trial court acted within its discretion when it imposed a sentence of 150 years for murder, such a sentence "means denial of hope"); *Bear Cloud v. State*, 334 P.3d 132, 144 (Wyo. 2014) (holding that an aggregate sentence of just over forty-five years was the de facto equivalent of a life sentence without parole); *State v. Null*, 836 N.W.2d 41, 72 (Iowa 2013) (holding that "*Miller*'s principles are fully applicable to a lengthy term-of-years sentence"); *People v. Caballero*, 282 P.3d 291, 296 (Cal. 2012) (holding that "sentencing a juvenile offender for a nonhomicide offense to a term of years with a parole eligibility date that falls outside the juvenile offender's natural life expectancy constitutes cruel and unusual punishment in violation of the Eighth Amendment"). However, some courts have concluded that *Miller* and *Graham* are inapplicable to term-of-years sentences. *See Bunch v. Smith*, 685 F.3d 546, 552-53 (6th Cir. 2012) (concluding that even though an aggregate sentence of eighty-nine years may be the functional equivalent of life, *Graham* applied only to sentences of "life," not aggregate sentences that result in a lengthy term of years); *State v. Brown*, 118 So.3d 332, 342 (La. 2013) (concluding that "nothing in *Graham* addresses a defendant convicted of multiple offenses and given term of year sentences").